IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**VICKI L. FRYE**

**VS.**                                                   **CIVIL ACTION NO. 1:07CV164-DAS**

**MICHAEL J. ASTRUE,**
**Commissioner of**
**Social Security**

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of Vicki L. Frye for disability benefits under Title II of the Social Security Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court has considered the administrative transcript, the briefs of the parties, and the applicable law and rules as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

The plaintiff filed an application for disability benefits under Title II on January 27, 2003, alleging a disability onset date of July 1, 1999. The application was denied initially and upon reconsideration. Then, in a hearing decision dated December 14, 2004, an administrative law judge ("ALJ") found that the plaintiff was not disabled as defined in the Social Security Act. The plaintiff filed a request for review of that decision, which the Appeals Council granted on March 30, 2005. Thereafter, a new hearing took place, and the ALJ issued a new, unfavorable decision on August 19, 2006. The Appeals Council then denied the plaintiff's request for review of that

decision on May 11, 2007. That decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The plaintiff was born on October 15, 1951 and was 54 years old at the time of the hearing decision on August 19, 2006. She completed high school and one year of college. Her previous work included jobs as a medical secretary and a billing clerk. She alleged she could no longer work because of chronic anemia, fatigue, sudden drops in blood sugar, and an inability to mentally and visually maintain focus. The plaintiff was obese at 5' 4½" and 228 pounds. After review and evaluation of the medical evidence, the subjective testimony at the hearing, and the testimony of a vocational expert, the ALJ found the plaintiff not disabled. The ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform work that did not require lifting more than ten pounds occasionally and negligible amounts frequently and could otherwise perform the full range of sedentary work under 20 C.F.R. § 404.1567(a). The ALJ further found the plaintiff could return to her past work as a medical secretary and billing clerk.

## II. APPLICABLE LAW & STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second,

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

2

the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[8] *Muse*, 925 F.2d at 789.

*Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . ." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS OF THE ISSUES

In her brief, the plaintiff states that the Appeals Council erroneously denied her request for review; however, she does not provide any specific argument. Additionally, the plaintiff makes a general statement that the ALJ's decision is not supported by substantial evidence and goes on to recite the medical evidence she feels supports her disability claim. Nevertheless, the Court gleans at least three main issues from the plaintiff's brief: 1) whether the ALJ erred in determining that many of the plaintiff's impairments were not severe; 2) whether the ALJ failed to give proper consideration to the opinions of the plaintiff's treating physicians; and 3) whether the ALJ failed to consider the combined effect of all of the plaintiff's impairments in determining

her RFC. The Court will discuss these issues separately.

**Issue 1 - Severity of Impairments**

The Plaintiff suggests the ALJ erred in not finding her lipoma, heart palpitations, chronic fatigue syndrome, urinary tract infections (UTI's), elevated Ferritin, and depression severe. The plaintiff offers no argument beyond the general statement that her treating physicians deemed these conditions severe and disabling. The Fifth Circuit has construed the regulations as setting the following standard for non-severity:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984).

At step two of the sequential evaluation process, the ALJ recited the correct standard for determining the severity of the plaintiff's impairments and determined that with the exception of impairments secondary to her iron and B-12 deficiencies, remote gastric stapling and bypass, osteopenia, and possible fibromyalgia with intermittent fatigue, the plaintiff had no other severe impairments. The Court finds that substantial evidence in the record supports the ALJ's conclusion. For example, on April 30, 1999, Dr. Robert Bailey saw the plaintiff for her complaint of periodic aching and pain from a nodule on her left leg. On May 10, 1999, Dr. Bailey removed the benign lipoma from the plaintiff's left leg. It was noted that she tolerated the procedure well. During a follow-up visit on May 17, 1999, though she had swelling and numbness around the wound area, she ambulated without difficulty. By May 24, 1999, the swelling had resolved and it was noted that the wound was healing nicely. Accordingly, the

evidence suggests the plaintiff's lipoma resolved prior to her alleged onset date. The Court will not discuss the remaining impairments proffered by the plaintiff, as many of these conditions are discussed in detail below. Moreover, because the ALJ found at least one severe impairment and continued the sequential evaluation process, the plaintiff cannot show that she was prejudiced by the ALJ's findings at step two. Therefore, the Court finds the plaintiff's first argument is without merit.

**Issue 2 - Treating Physicians' Opinions**

The plaintiff contends that medical evidence from her treating physicians, Drs. Evans, Segars, and Atkinson, established she had severe conditions that prevented her from working and argues the ALJ failed to assign adequate weight to these physicians' opinions. Additionally, the plaintiff contends the ALJ attributed undue weight to the opinion of a one-time examining physician, Dr. Adams. As an initial matter, the Court must remind the plaintiff that it is not the role of this Court to reweigh the evidence but to determine whether the ALJ's decision is supported by substantial evidence.

The weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. *Elzy v. Railroad Retirement Board,* 782 F.2d 1223, 1225 (5th Cir.1986); *Jones v. Heckler,* 702 F.2d 616, 621 (5th Cir.1983). An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir.1981). The ALJ is required to give substantial weight to the doctors' medical findings, not to their opinions about the actual availability of work for a person. *Loya v. Heckler,* 707 F.2d 211, 214 (5th Cir.1983).

A treating physician's opinion regarding the nature and severity of a patient's condition is normally given controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Nonetheless, "the treating physician's opinions are not conclusive," and his "opinions may be assigned little or no weight when good cause is shown." *Id*. Ultimately, "the ALJ has the sole responsibility for determining a claimant's disability status." *Id.*

*Dr. George Evans*

Dr. Evans treated the plaintiff for a variety of conditions from the early 1990's until 2002. Specifically, the plaintiff regularly received B-12 shots for her B-12 deficiency and iron IV therapy for her iron deficiency anemia. Dr. Evans also treated the plaintiff for chronic urinary tract infections ("UTI") and sinus problems and diagnosed fibromyalgia, hypoglycemia, dumping syndrome, heart palpatations, and mild osteopenia. An EKG and Thallium stress test performed in 2001 were negative, however, and by January 2002 the plaintiff had no complaint of palpatations; her B-12 deficiency, anemia and hypoglycemia were controlled; and her dumping syndrome was resolving. In a Form Fibromyalgia Residual Functional Capacity questionnaire dated October 2006, Dr. Evans indicated diagnoses of fibromyalgia, carpel tunnel syndrome, and Temporomandibular Joint Dysfunction ("TMJ"). He identified the following symptoms: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, TMJ, numbness and tingling, anxiety, panic attacks, depression, carpal tunnel syndrome, and chronic fatigue syndrome. He indicated that the plaintiff's prognosis was poor and expected to last a year or longer. He identified limitations in lifting only less than 10 pounds; sitting and standing only less than two hours in an eight-hour workday; only occasional bending and twisting

7

at the waist; significant limitation in reaching, handling, and fingering; and an inability to sustain any type of manual or sedentary work at any pace for any amount of time.

The ALJ discussed the treatment the plaintiff received from Dr. Evans, but did not have the benefit of Dr. Evans' October 2006 questionnaire responses. The Appeals Council considered this subsequent evidence, however, and found no reason to review the ALJ's decision. The Court finds that the record supports this determination. First, Dr. Evans' questionnaire responses are inconsistent with his own treatment notes and the medical evidence as a whole. Indeed, the plaintiff has not pointed to any mention in any record of diagnosis or treatment for TMJ, carpel tunnel syndrome, panic attacks or depression in Dr. Evans' notes. Secondly, Dr. Evans' last treatment note of record is dated November 14, 2002. His questionnaire responses, dated nearly four years later – and almost two years after the plaintiff's insured status expired – can hardly be deemed relevant, especially with regard to the new diagnoses. *See Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) ( holding that subsequent medical evidence is relevant only to the extent it reflects upon the claimant's condition prior to the expiration of his insured status).

*Dr. Segars*

The plaintiff began receiving treatment from Dr. Scott Segars in 2003. On April 19, 2005, Dr. Segars completed a Form Fibromyalgia Residual Functional Capacity Questionnaire in which he indicated that the plaintiff had chronic fatigue syndrome ("CFS"), fibromyalgia, and elevated Ferittin. He noted that these diagnoses had a poor prognosis. Dr. Segars indicated that the plaintiff could sit for about four hours but could only stand for 20 to 30 minutes at a time, for less than two hours in an eight- hour workday. She could never lift any weight and would have to lie down to rest three to four times a day. Dr. Segars also noted that the plaintiff had significant limitations in

reaching, handling, and fingering and could not bend or twist at the waist. Lastly, he estimated that the plaintiff would be absent from work more than three times a month due to her impairments or treatment. The ALJ rejected Dr. Segars' diagnosis of CFS as speculative because other medical and psychiatric causes of the plaintiff's fatigue had not been ruled out in accordance with the Centers for Disease Control and Prevention ("CDC") criteria.[9] Additionally, he noted that the diagnosis was not accompanied by corroborating laboratory and clinical findings. Accordingly, the ALJ found it was not a medically determinable impairment, let alone a severe one. Moreover, the ALJ found that Dr. Segars' conclusions were not entitled to controlling weight because they were not accompanied by corroborating laboratory and clinical findings and were inconsistent with progress notes from his

---

[9] In pertinent part, The Centers for Disease Control and Prevention (CDC) Guidelines for the Evaluation and Study of CFS state:

> A thorough medical history, physical examination, mental status examination, and laboratory tests (diagram) must be conducted to identify underlying or contributing conditions that require treatment. Diagnosis or classification cannot be made without such an evaluation. Clinically evaluated, unexplained chronic fatigue cases can be classified as chronic fatigue syndrome if the patient meets both the following criteria:
>
> 1. Clinically evaluated, unexplained persistent or relapsing chronic fatigue that is of new or definite onset (i.e., not lifelong), is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities.
> 2. The concurrent occurrence of four or more of the following symptoms: substantial impairment in short-term memory or concentration; sore throat; tender lymph nodes; muscle pain; multi-joint pain without swelling or redness; headaches of a new type, pattern, or severity; unrefreshing sleep; and post-exertional malaise lasting more than 24 hours. These symptoms must have persisted or recurred during 6 or more consecutive months of illness and must not have predated the fatigue.

CENTERS FOR DISEASE CONTROL AND PREVENTION, CHRONIC FATIGUE SYNDROME: DEFINITION (May 5, 2006), http://www.cdc.gov/cfs/cfsdefinitionHCP.htm.

own clinic. The Court is obliged to point out that the records from Dr. Segars' office show he treated the plaintiff mainly for complaints of UTI's, sinus trouble, and heart palpitations. It is also interesting that on most visits the plaintiff had no musculoskeletal complaints, and she merely reported a history of chronic fatigue. Based on this, the Court finds substantial evidence supports the ALJ's decision not to assign controlling weight to Dr. Segars' conclusion of disability.

*Dr. Adams*

On November 17, 2005, the plaintiff was consultatively examined by Dr. Jim Adams, who found she used no assistive device to walk, and she had a normal gait despite her obesity. Dr. Adams also noted that the plaintiff had no difficulty getting up on the examination table. He noted the plaintiff had full strength in her grip, biceps, triceps, quadriceps, and hamstrings bilaterally. She also had full range of motion in her fingers, wrists, elbows, forearms, shoulders, hips, knees, and ankles. The plaintiff had no motor or sensory deficits, and reflexes were equal. Remarkably, Dr. Adams noted that the plaintiff did not say she had fibromyalgia. Dr. Adams submitted a medical source statement which indicated the plaintiff could perform the exertional demands of sedentary work, including lifting ten pounds occasionally and five pounds frequently, standing or walking for a total of two hours a day, and sitting without limitation. Dr. Adams considered the plaintiff's post gastric bypass, fatigue, obesity, B-12 deficiency and nonspecific joint and muscle pain. The plaintiff argues that Dr. Adams saw her only once and did not have the benefit of her medical records. The Court finds these arguments are without merit. Dr. Adams examined the plaintiff and noted all the impairments and symptoms alleged by her. Indeed, he noted that his conclusions were based primarily on her subjective complaints. The ALJ adopted Dr. Adams' medical source statement because it was supported by his objective clinical findings and was consistent with the medical

evidence of record as a whole. The Court finds substantial evidence supports the ALJ's decision.

*Dr. Atkinson*

The ALJ assigned very little weight to the medical source statement of Bonnie Atkinson, Ph.D. The plaintiff saw Dr. Atkinson for the first time in March 2006. Dr. Atkinson opined that the plaintiff had marked limitations in mental functioning which essentially prevented her from working on a sustained basis. The ALJ pointed out, among other things, that Dr. Atkinson's conclusions were inconsistent with her own treatment notes. Moreover, Dr. Atkinson, a psychologist, based some of her conclusions on the plaintiff's alleged physical limitations. As with any expert witness, a treating physician's opinion is subject to criticism as being outside his or her area of expertise. *Turley v. Sullivan,* 939 F.2d 524, 527 (8th Cir. 1991). The ALJ's decision with regard to the weight assigned to Dr. Atkinson's opinion is supported by substantial evidence.

Ultimately, because the ALJ noted the correct standard in evaluating the medical opinions of record and because the weight he attributed to each opinion is supported by substantial evidence in the record, the second argument is without merit.

**Issue 3 - Combined Effect of Impairments on RFC**

Finally, the plaintiff argues the ALJ did not consider all of her impairments in combination in determining her RFC. Specifically, the plaintiff contends the ALJ overlooked evidence of a mental impairment and impairments associated with fibromyalgia and CFS. The plaintiff also contends the ALJ failed to propound hypotheticals to the vocational expert ("VE") and based his decision that she could return to her past work solely on "assumptions" that her past work was sedentary and that she could perform sedentary work. The record shows the plaintiff's contentions with regard to issue are without merit.

To determine whether a claimant can return to a former job, the claimant's RFC must be assessed. *See Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545 (2008). This term of art represents an individual's ability to perform activities despite the limitations imposed by an impairment. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); *see also* 20 C.F.R. § 404.1545 (2008). RFC combines a medical assessment with the descriptions by physicians, the claimant or others of any limitations on the claimant's ability to work. *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *see also* 20 C.F.R. § 404.1545 (2008).

In evaluating a claimant's RFC, the Fifth Circuit has looked to SSA rulings ("SSR"). *See Myers*, 238 F.3d at 620. In *Myers*, the court noted that SSR 96-8p provides that a RFC is an assessment of an individuals ability to do work-related physical and mental activities in a work setting on a regular and continuing basis, or 8 hours a day, for 5 days a week, or an equivalent work schedule. When making a RFC determination, the Commissioner decides whether an applicant retains physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See* 20 C.F.R. § 404.1545(a) (2008); Soc. Sec. R. 96-8p (1996), 1996 WL 374184. The RFC assessment is a function-by-function assessment based on all the relevant evidence of an individual's ability to do work-related activities.

In this case, the ALJ made a proper determination of the plaintiff's RFC. As discussed above, the ALJ largely rejected the conclusions of the plaintiff's treating physicians because they were inconsistent with the evidence as a whole. In arriving at the plaintiff's RFC, the ALJ relied heavily upon the statement of Dr. Adams, but he also considered the plaintiff's testimony regarding her symptoms and limitations. The ALJ found the plaintiff's testimony not fully credible to the extent that the plaintiff's testimony regarding the degree of her physical and mental symptoms and

12

pain was inconsistent with the record as a whole. Ultimately, contrary to the plaintiff's contentions, the ALJ relied upon the testimony of the VE in making the determination that the plaintiff could return to her past work. The ALJ propounded three hypotheticals to the VE. And, in response to a hypothetical consistent with Dr. Adams' assessment of the plaintiff, the VE testified that the individual could return to the plaintiff's past work. A person capable of performing her past relevant work is not disabled. *See* 20 C.F.R. § 404.1520 (a)(4)(iv) (2008). Therefore, the ALJ's RFC determination and finding of no disability are supported by substantial evidence.

## CONCLUSION

Based on the findings and conclusions herein, the decision of the Commissioner should be affirmed. A final judgment consistent with this opinion shall issue forthwith.

This, 30th day of September, 2008.

/s/ David A. Sanders
U. S. Magistrate Judge